UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID ARCE PAEZ,

                      Petitioner,

        v.

BRUCE SCOTT et al.,

                      Respondents.

CASE NO. 2:26-cv-01144-LK

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

This matter comes before the Court on Petitioner David Arce Paez's petition for writ of habeas corpus. Dkt. No. 1. For the reasons explained below, the Court denies the petition.[1]

## I.    BACKGROUND

Arce Paez is a native and citizen of Mexico. Dkt. No. 6-1 at 2. In 2009, he was ordered removed from the United States pursuant to Section 235(b)(1) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1225(b)(1). Dkt. No. 6-2. At some point thereafter, he reentered the United States without inspection. Dkt. No. 6-3 at 4. In September 2015, he was arrested and convicted for driving while intoxicated. *Id.* Immigration and Customs Enforcement

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 1

("ICE") encountered Arce Paez at the Clark County Jail in September 2015 after his arrest for that offense, but he "was released by local authorities before immigration enforcement could occur." Dkt. No. 4 at 2; *see also* Dkt. No. 6-3 at 3. On October 21, 2025, ICE agents conducted a "targeted enforcement activity" on Arce Paez. Dkt. No. 6-3 at 3. The agents stopped a car in which Arce Paez was a passenger and arrested him for immigration violations. *Id.* 3–4. He was ultimately transferred to the Northwest ICE Processing Center ("NWIPC"), where he remains detained. Dkt. No. 5 at 2.

The same day he was arrested, the U.S. Department of Homeland Security ("DHS") issued a "Notice of Intent/Decision to Reinstate Prior Order" to Arce Paez, reinstating his prior final order of removal from 2009 pursuant to Section 241(a)(5) of the INA, which is codified at 8 U.S.C. § 1231(a)(5). Dkt. No. 6-5. Arce Paez expressed fear of being returned to Mexico because "he has been targeted by cartels, his own family members involved in organized crime, and Mexican government authorities, all due to his family name and perceived association with criminal groups." Dkt. No. 1 at 3–4. On November 13, 2025, U.S. Citizenship and Immigration Services ("USCIS") determined that Arce Paez did not have a reasonable fear of persecution or torture in Mexico, and Arce Paez requested that an Immigration Judge ("IJ") review the decision. Dkt. No. 5 at 2; *see* Dkt. No. 6-6 (Record of Negative Reasonable Fear Finding and Request For Review by Immigration Judge). On December 4, 2025, an IJ affirmed USCIS's decision. Dkt. No. 5 at 2; *see* Dkt. No. 6-7 (IJ's order). On December 5, 2025, Arce Paez filed a Petition for Review with the 9th Circuit Court of Appeals. Dkt. No. 5 at 2. In connection with those Ninth Circuit proceedings, a stay of removal has been granted and remains in effect. Dkt. No. 1 at 4; *accord* Dkt. No. 4 at 5 ("Once the Ninth Circuit resolves Petitioner's pending petition for review, the reinstated order of removal will become fully executable.").

On April 3, 2026, Arce Paez filed a petition for a writ of habeas corpus. Dkt. No. 1. Respondents[2] filed a return on April 20, Dkt. No. 4, and Arce Paez filed a traverse on April 27, Dkt. No. 7.

## II.    DISCUSSION

Arce Paez asserts that his "continued detention—without individualized justification and while removal is legally barred—violates due process and is excessive in relation to any legitimate governmental objective." Dkt. No. 1 at 7. He argues that his continued detention violates *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), because his removal is not reasonably foreseeable while his case is stayed before the Ninth Circuit. *Id.* at 7–9. He requests that the Court order his release from detention, or in the alternative, order his release "upon payment of a monetary bond in an amount deemed reasonable by the Honorable Judge, and/or under appropriate conditions of supervision[.]" *Id.* at 12. He also requests injunctive relief prohibiting Respondents "from re-detaining [him] after release[.]" *Id.*

### A.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 3

Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas*, 533 U.S. at 687 (2001).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

When a final order of removal has been entered, a noncitizen enters a 90-day "removal period." 8 U.S.C. § 1231(a)(1). To ensure a noncitizen's presence for removal and to protect the community from noncitizens who may present a danger, Congress mandated detention during the 90-day "removal period." 8 U.S.C. § 1231(a)(2). Section 1231(a)(6) authorizes ICE to continue detention of noncitizens after the expiration of the removal period. 8 U.S.C. § 1231(a)(6). Although there is no statutory time limit on detention pursuant to Section 1231(a)(6), the Supreme Court has held that a noncitizen may be detained only "for a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Section 1231(a)(6) thus "requir[es] release from long-term detention" when there is no significant likelihood of removal in the reasonably foreseeable future. *Jennings v. Rodriguez*, 583 U.S. 281, 311 (2018) (citation modified).

**B.    Arce Paez is Not Entitled to Relief Under *Zadvydas***

As discussed above, Arce Paez has been detained since October 21, 2025. Dkt. No. 5 at 2. Respondents contend that he is held lawfully pursuant to 8 U.S.C. § 1231(a)(6) because he has a final order of removal from 2009 that was reinstated pursuant to § 1231(a)(5). Dkt. No. 4 at 4 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 530–31 (2021); *Padilla-Ramirez v. Bible*, 882 F.3d 826, 833 (9th Cir. 2017)). Arce Paez agrees that he is held pursuant to 8 U.S.C. § 1231(a)(6), but argues that his "removal is not reasonably foreseeable, and continued detention is no longer authorized under *Zadvydas*." Dkt. No. 7 at 1. Respondents argue that his removal "remains highly foreseeable" because when the "Ninth Circuit resolves [Arce Paez's] pending petition for review, the reinstated order of removal will become fully executable," and his home country, Mexico, "is a country with which the United States maintains strong repatriation cooperation." Dkt. No. 4 at 5.

In sum, the critical issue here is whether the pendency of Arce Paez's appeal of his adverse reasonable fear determination, which Respondents assert is the only thing preventing them from removing Arce Paez, renders his detention under 8 U.S.C. § 1231(a)(6) indefinite such that his

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 5

removal is "no longer reasonably foreseeable" in violation of due process. *Zadvydas*, 533 U.S. at 699. All federal appellate courts that have considered the issue have concluded that relief under *Zadvydas* is unavailable where delay in removal is caused by ongoing litigation. As the Fourth Circuit put it:

> Critically, withholding-only proceedings are finite. In the ordinary course, they continue only for such time as a determination can be made concerning the legality of removing the [noncitizen] to the designated country. If the [noncitizen] fails to obtain withholding-only relief, and absent any other diplomatic or logistical barriers, then the government can—and must—promptly carry out the [noncitizen]'s removal to the designated country. If the [noncitizen] prevails, then the government may still remove the [noncitizen] to another country, assuming it continues to pursue removal at all. In either case, however, the withholding-only proceedings end. And if the withholding-only proceedings have a definite ending point, then so too must the detention pending the resolution of those proceedings. As such, ongoing withholding-only proceedings, even lengthy ones, simply do not present the same risk of "indefinite and potentially permanent" detention at issue in *Zadvydas*. Stated differently, ongoing withholding-only proceedings do not, standing alone, cast doubt on the foreseeability of a[ noncitizen]'s removal in the future.

*Castaneda v. Perry*, 95 F.4th 750, 757–58 (4th Cir. 2024) (citation omitted). Similarly, the First Circuit in *G.P. v. Garland* held that a noncitizen who was "being detained because his CAT proceedings remain[ed] pending" was not in removable-but-unremovable limbo because "once [his] withholding-only proceedings end[ed], he w[ould] either be removed to the Dominican Republic or the government w[ould] have to begin the process of finding a different country to accept him." 103 F.4th 898, 902 (1st Cir. 2024) ("In concluding that [petitioner] is not entitled to habeas relief, we align ourselves with all of the circuit courts that have considered analogous circumstances."). The Sixth Circuit in *Martinez v. Larose* likewise found that removal was "reasonably foreseeable" even where the noncitizen's withholding-only proceedings would have to "wind back through the immigration courts" if he prevailed, because "[i]f [the noncitizen] d[id] not prevail in his pending actions before [the Sixth Circuit] and the BIA, nothing should impede the government from removing him to El Salvador," and if the noncitizen did prevail at the Sixth

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 6

Circuit or BIA, he could "refile his § 2241 petition and argue at that point that there is no significant likelihood of removal in the reasonably foreseeable future." 968 F.3d 555, 565 (6th Cir. 2020). The Tenth Circuit came to the same conclusion in *Soberanes v. Comfort*: where the delay in removal is "directly associated with a judicial review process that has a definite and evidently impending termination point," the noncitizen's detention "is clearly neither indefinite nor potentially permanent like the detention held improper in *Zadvydas*[.]" 388 F.3d 1305, 1311 (10th Cir. 2004). Finally and most significantly, the Ninth Circuit applied *Zadvydas* in a case where the noncitizen was detained under Section 1226(a), concluding that although the noncitizen's removal "ha[d] certainly been delayed by his pursuit of judicial review of his administratively final removal order, he [wa]s not stuck in a 'removable-but-unremovable limbo.'" *Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008).

Arce Paez argues that his case is "[u]nlike . . . *Prieto-Romero*, where removal remained legally permissible and the government retained the ability to execute removal upon completion of proceedings," because "Respondents here are affirmatively barred from removing [him] while the judicial stay remains in effect." Dkt. No. 7 at 3. This is a distinction without a difference: the stay does not prevent Arce Paez's removal upon completion of proceedings. As in *Castenada*, *G.P.*, and *Prieto-Romero*, there is no dispute regarding Arce Paez's removability or the government's ability to remove him to his country of origin (or a third country, if his appeal is successful). Thus, "[i]f [Arce Paez] does not prevail in his withholding-only proceedings, then nothing stands in the way of his prompt removal to [Mexico]," and "if he does succeed, nothing would prevent ICE from removing him to another country." *Castaneda*, 95 F.4th at 758. Arce Paez has also not shown any evidence of bad faith or undue delay on the part of the government, *see G.P.*, 103 F.4th at 902, and Respondents note that the "government has already filed a motion for summary disposition in [the Ninth Circuit], demonstrating its active and diligent pursuit of a

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 7

prompt resolution," Dkt. No. 4 at 5. The stay resulting from Arce Paez's ongoing appeal does not create a "removable-but-unremovable limbo" because "ongoing withholding-only proceedings alone are insufficient to demonstrate that removal is no longer reasonably foreseeable." *Castaneda*, 95 F.4th at 758. "To reach a contrary result would be to go against th[e] clear weight of authority[.]" *Id.* at 759.[3]

**C.      The Court Denies Arce Paez's Request for Injunctive Relief**

Citing no authority[4] and providing no argument on the point, Arce Paez requests an order prohibiting Respondents from "re-detaining him after release[.]" Dkt. No. 1 at 12. Respondents oppose the request as "overbroad and unsupported by law," noting that, per the regulations at 8 C.F.R. §§ 241.4, 241.13, any "decision to re-detain [Arce Paez] would depend on changed circumstances, such as new evidence of flight risk, danger to the community, or changed removal prospects, and would itself be subject to administrative and, if necessary, judicial review at that time." Dkt. No. 4 at 9. Arce Paez does not argue the point further in his traverse. *See generally* Dkt. No. 7.

---

[3] Arce Paez's petition does not meaningfully engage with the statute and implementing regulations to which he is subject, and instead essentially insists that due process demands the same procedures no matter which statute applies. *See generally* Dkt. No. 1. But the Ninth Circuit has rejected such a proposition, and this Court does too. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Id.*; *see also id.* at 1203 (explaining that because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the court could not accept petitioner's "suggestion that [the court's decisions regarding other detention provisions] mandate[d] the same procedural relief in this case"). The Court notes that applicable regulations require at least annual custody reviews for noncitizens detained under 1231(a)(6) (and earlier reviews if circumstances materially change). 8 C.F.R. §§ 241.4(k)(2)(iii)–(iv). During those reviews, officials must consider both "[f]avorable factors" (such as "close relatives residing here lawfully") and unfavorable factors (such as "flight risk" and "[p]rior immigration violations"). 8 C.F.R. § 241.4(f). The noncitizen has the right to submit evidence, to use an attorney or other representative, and, if appropriate, to seek a government-provided translator. 8 C.F.R. §§ 241.4(h)(2) and (i)(3)(i)–(ii). Again, Arce Paez does not address these procedural protections or assert that they are inadequate. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").

[4] This is not an isolated occurrence. Much of Arce Paez's briefing is entirely bereft of citations to legal or factual authority. *See generally* Dkt. Nos. 1, 7. The Court declines to supply such authority for him. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)).

Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020). Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953)). The Court denies Arce Paez's request because he has not established a violation, let alone a cognizable danger of recurrent violation.

### III.   CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus, Dkt. No. 1, is DENIED.

Dated this 19th day of May, 2026.

Lauren King
United States District Judge

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS - 9